#300015879

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 1 7 2025

CLERK, U.S. DISTRICT COURT
By __AGC__
Deputy

BRETT FREEMAN,                    )
           Petitioner,        )        **CIVIL ACTION**
                        )
vs.                               )        **NO:** **3-25CV0126-S**
                        )
SYNEOS HEALTH, LLC,               )
           Respondent.        )

## PETITION TO VACATE ARBITRATION AWARD

Petitioner, Brett Freeman (hereinafter referred to as "Mr. Freeman" or "Petitioner"), timely

petitions this Honorable Court pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 10 to vacate

the JAMS Arbitration Award (the "Arbitration Award"), Case No. 5310000660, rendered in Dallas, TX

on October 30, 2024 by Hugh E. Hackney ("Arbitrator Hackney"), in favor of Respondent Syneos

Health, LLC (hereinafter to as "Syneos" or "Respondent"), and order a rehearing on the matter.  In

support thereof, Petitioner shows the Court the following:

### I. INTRODUCTION

Petitioner is a resident of Tulsa County, Oklahoma. Respondent is a limited liability company

organized and existing under the laws of the State of Delaware with its principal office and place of

business located in Wake County, North Carolina. Petitioner is one of several Syneos employees who

were terminated on about January 31, 2022 for refusing to take an employer-mandated COVID

vaccination, despite having previously been granted an exemption by the same employer (Syneos)

from the vaccination requirement on religious grounds.  On about October 24, 2022, Petitioner (who

received a Right to Sue letter from the EEOC on September 12, 2022) was one of eight plaintiffs who

filed an action against Syneos because of the wrongful terminations, asserting Title VII claims and

claims for Fraud and for Unfair and Deceptive Trade Practices (UDTP) under Chapter 75 of the North

Carolina General Statutes.  That action is entitled *Jami Lynn Scott, et. al. v. Syneos Health, LLC.,* Civil

Action No. 5:22cv00163-KDB-DCK (WDNC) (federal lawsuit).

On December 15, 2022, following numerous requests by Petitioner's counsel for employment documentation, counsel for Syneos in that action sent Petitioner's counsel an email, advising that Petitioner had signed an arbitration agreement and requesting that Petitioner dismiss himself from the federal lawsuit and submit his claim to arbitration.  This was the first knowledge that Petitioner had that there was an arbitration agreement between his and Syneos.  Petitioner apparently unknowingly electronically signed an arbitration agreement during an "onboarding process" when he was first hired by Syneos, in the course of which he apparently electronically signed a number of "soft" documents online.

On December 27, 2022, Syneos filed a Partial Motion to Dismiss, seeking to either dismiss from the federal lawsuit Petitioner or compel Petitioner to go to arbitration.  On March 3, 2023, Petitioner voluntarily dismissed himself from the federal lawsuit.  On January 23, 2024, Petitioner filed a Demand for Arbitration with JAMS, incorporating therein the original complaint in the federal lawsuit.

## II.   ARGUMENT

### A. Standard of Review

9 U.S.C. § 10(a) provides an avenue of appeal from an adverse arbitration award, as follows:

(a) In any of the following cases the United States court in and for the district wherein the award was made my make an order vacating the award upon the application of any party in the arbitration–

1) where the award was procured by corruption, fraud, or undue means

2) where there was evident partiality or corruption in the arbitrators, or either of them;

3) where the arbitrators were guilty of misconducted in refusing to postpone hearing, upon sufficient cause shown, or *in refusing to hear evidence pertinent and material to the controversy*; or of any other misbehavior by which the rights of any party have been prejudiced; or

4) where the arbitrators *exceeded their powers,* or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(Emphasis supplied)

As shown below, the arbitrator's conduct falls within 9 U.S.C. § 10(a)(3), 9 U.S.C. § 10(a)(4) and possibly 9 USC § 10(a)(2), thereby giving grounds for the Court to vacate the arbitration award entered herein and remand the case back to the arbitrator for a new hearing.

**B. Arbitrator Hackney Clearly Used the Wrong Legal Standard in Ruling Upon Respondent's Rule 12(b)(6) Motion to Dismiss**

The arbitrator, in his Award, improperly mixed Rule 12(b)(6) and summary judgment standards. Attached hereto, labeled Exhibit "A" is a copy of the arbitrator's Award. The Award cites legal standards for deciding on a Rule 12(b)(6) motion.  (See pp. 6-7 of Exhibit "A").  Yet, the arbitrator makes credibility determinations and weighs evidence, stating that he "...evaluated credibility, demeanor and persuasiveness..."  (See p. 3 of Exhibit "A").  Also, the arbitrator applied summary judgment case analysis ( actually citing *Briggs* case), a summary judgment case, at the pleading stage. (See p. 15 of Exhibit "A.").  Additionally, the arbitrator was not supposed to be looking at exhibits at this stage of litigation like he did (See p. 3 of Exhibit "A").

When discussing the legal standard for ruling on a Rule 12(b)(6) Motion to Dismiss, appellate courts consistently discuss the sufficiency of the complaint on its face ("...failure to state a claim"). See, for example, *Ashcroft v. Iqbal*, 556 US 662, 679 (2009), stating that "..a **complaint** should be dismissed when the alleged facts only permit the court (or Arbitrator) to infer 'the mere possibility of misconduct', but are not sufficient to show that the requested relief is plausible."  (Emphasis supplied) . See also *Connelly v. Lane Construction Corporation*, 809 F. 3d 780 (2016)  and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F. 3d 250 (2009).  It is clear that the arbitrator went beyond measuring the sufficiency of the Demand for Arbitration on its face to making an analysis that clearly "weighed" evidence and other pleadings.

Petitioner was thereby prejudiced in that his claim was prematurely dismissed before he had the opportunity to conduct discovery; was unable to develop evidence which was exclusively in the

possession and control of the Respondent; had no opportunity to present evidence on a fraud scheme

regarding benefits; and claims were dismissed based upon insufficient detail that discovery would have

provided.

This conduct of the arbitrator constitutes an "… exceeding his powers" in violation of 9 U.S.C.

§ 10(a)(4) and potentially 9 USC § 10(a)(2), as there is no apparent legal reason for him to have done

so.  This conduct of the arbitrator applying the incorrect legal standard for a Rule 12(b)(6) motion is so

egregious as to, of itself, warrant the vacating of the arbitration Award and send the case back to

arbitration for a new hearing.

**C. Arbitrator Hackney Appears to Merely Be Cutting and Pasting Respondent's Memorandum of Law in Support of Motion to Dismiss, Thereby Not Giving Consideration to the Law and Petitioner's Arguments and Thereby Manifestly Failing to Exercise His Authority, and/or Exhibiting Bias**

Though Syneos filed a Reply to Petitioner's response and Petitioner was allowed to file a Sur-

reply, it should be noted that the arbitrator, in his Award, (nearly) directly quotes Syneos' original brief

practically word-for-word.  See attached as Exhibit "A," the arbitrator's Award and, attached as Exhibit

"B," Syneos' Memorandum of Law in Support of Motion to Dismiss ("Syneos' Memorandum), minus

exhibits. See below for examples of how the Award almost exactly mirrors Syneos' Memorandum:

| Award | Syneos Memorandum |
|---|---|
| Procedural History, pp. 4-5 | Procedural History, pp. 2-3 |
| Claimant's Employment with Syneos, pp. 5-6 Standard of Review, pp. 6-7 | Claimant's Employment with Syneos, pp. 3-4 Standard of Review, pp. 4-5 |
| Claimant's Title VII Claims Have Expired and Must Be Dismissed, pp. 7-11 | Claimant's Title VII Claims Have Expired and Must Be Dismissed, pp. 5-9 |
| Claimant's UDTP Claim Fails as a Matter of Law Because Claims under Chapter 75 Are Not Applicable to Employment Disputes, pp. 11-12 | Claimant's UDTP Claim Fails as a Matter of Law Because Claims under Chapter 75 Are Not Applicable to Employment Disputes, pp. 9-10 |
| Claimant's Fraud Claim Fails as a Matter of Law, pp. 12-16 | Claimant's Fraud Claim Fails as a Matter of Law, pp. 10-13 |

The arbitrator gives no consideration or mention of the Petitioner's patently or potentially valid

arguments or of the arbitrator's independent thought and decision-making or ability to reason.

Given the fact that the Award merely mirrors the argumentation made in Syneos' Memorandum, it does not appear that the arbitrator gave any consideration to any of the arguments made in Petitioner's responsive brief in reaching a decision. ***In fact, the Award contains discussions of arguments that were not actually made in Petitioner's responsive brief*** such as regarding tolling by a "savings statute," for the simple reason that Syneos' Memorandum made anticipatory arguments regarding a "savings statute." It is almost as if the arbitrator never reviewed Petitioner's responsive brief or heard **any** of counsels' arguments.

Here are examples of arguments the arbitrator failed to consider. On May 24, 2024, Syneos filed a Motion to Dismiss the arbitration, asserting in support thereof (a) that Petitioner's Title VII claims had expired because more than the required 90 days had elapsed since Petitioner had received his EEOC Right to Sue letter. In anticipating Petitioner's contention in opposition to the Motion to Dismiss, Syneos argued that the filing of the federal lawsuit did not toll the running of the 90-day limitation; that there was no "savings clause" that would toll that limitation and that the 90-day limitation (this is 90 days after Petitioner obtained his Right to Sue letter) was not tolled under the doctrine of equitable tolling and (b) Syneos asserted that Petitioner's fraud claim failed due to Petitioner's failure to sufficiently allege false representation or reliance. (Petitioner did not oppose dismissal of the UDTP claim).

On June 26, 2024, Petitioner filed a responsive brief apposing Syneos' Motion to Dismiss the arbitration. As was anticipated by Syneos, Petitioner argued that equitable tolling applied in light of Petitioner's lack of knowledge of the existence of an arbitration agreement until Syneos, being in sole possession of the electronic arbitration agreement, revealed its existence after the 90 days had run. That this revelation caused Petitioner to dismiss himself from the federal lawsuit and go to arbitration. Petitioner clearly distinguished his case from the only case Syneos had cited in support of its assertion

that equitable tolling does not apply.

Additionally, Petitioner asserted that Syneos was equitably estopped from asserting the 90-day statute of limitations because Syneos deliberately withheld the existence of the arbitration agreement until after 90 days had elapsed from the time Petitioner received his Right to Sue letter from the EEOC.

The Award pointed out at the beginning that Petitioner "...was unaware at the time of filing that he had ever executed an arbitration agreement, which was signed along with other electronic documents by checking a box on a computer screen as part of a multi-use software package utilized by Syneos for its employment 'on boarding' process..." (See p. 3 of Exhibit "A"). The Award then goes on to point out that, in support of Syneos' Motion for Partial Dismissal of the federal lawsuit, it had attached as exhibit, an email from Syneos' counsel to Petitioner's counsel dated December 15, 2022 stating "Please let me know if you will dismiss the claims of these three plaintiffs [including Petitioner] and proceed to arbitration." (See p. 3 of Exhibit "A"). The Award further acknowledges that "December 15, 2022, is outside of the 90 day period Respondent alleges Claimant was bound." (See p. 3 of Exhibit "A"). Despite acknowledging all that, the arbitrator failed to properly apply principles of equitable tolling and equitable estoppel under those acknowledged circumstances, thereby contradicting himself within the Award and thereby giving further indication that the arbitrator clearly failed to review Petitioner's responsive brief or consider Petitioner's argumentation therein regarding equitable tolling and equitable estoppel.

As to the fraud claim, Petitioner, in his responsive brief, made a clear showing that although he sufficiently alleged his claims that Syneos made certain false representations and that he relied upon such representations, even under the heightened requirements of both North Carolina and Federal Rule 9(b) that, in any event, the Motion to Dismiss was premature at the pleading stage because Petitioner had not had the opportunity to conduct any discovery in order to fill in the exact details that Syneos claimed were missing. Petitioner's response pointed out the unsuccessful efforts of his and the other plaintiffs in the federal lawsuit to obtain information at an early stage, both formally and informally of

which efforts were rebuffed.

A very reasonable inference would be that, because of being behind schedule in ruling on Syneos' Motion to Dismiss (September 2, 2024 to October 30, 2024), the arbitrator hurriedly drafted and filed the Award, not allowing sufficient time to consider both parties' arguments.

Petitioner does not contend that the arbitrator intentionally acted in intentional bad faith, he still acted in a careless and reckless manner in disregard of Petitioner's rights. For example, solely relying upon Syneos' initial brief without giving any real consideration to Petitioner's responsive brief and arguments contained therein.

By the arbitrator's conduct herein in failing to give due consideration to Petitioner's responsive brief and arguments contained therein, he has refused to consider material arguments to the controversy in violation of 9 U.S.C. § 10(a)(3), and constitutes an imperfect execution of his powers in violation of 9 U.S.C. § 10(a)(4).

### D. Disturbing and Inexplicable Delays in the Course of the Arbitration Process

Throughout the arbitration process, there had been numerous disturbing and inexplicable delays and issues regarding Petitioner's counsel not being copied on JAMS emails from the Arbitrator. For example, a ZOOM planning conference with the arbitrator was scheduled for April 11, 2024 at 12:00 p.m. Counsel for the parties waited approximately one hour for the arbitrator to join the call, but he never joined the call. At about 1:30 p.m. that day, one of Syneos' attorneys sent an email to Katie Venegas at JAMS for an update. At about 2:26 p.m. that day, Ms. Venegas responded thereto by stating that the arbitrator had a doctor's appointment that she did not know about. The arbitrator potentially did not tell JAMS staff that he had the doctor's appointment. Ms. Venegas offered to reschedule the planning conference for 3:00 that afternoon after the arbitrator was back from his doctor's appointment, but all the attorneys had conflicts. The ZOOM conference was rescheduled for May 9, 2024. At this ZOOM conference attended by the arbitrator, he interrogated the lawyers about their past personal

histories.  None of the personal lawyer background biographical information elicited had anything to do with the procedure or substance of the case.  The arbitrator appeared to be over 80 years of age and in poor health.

In the Amended Scheduling Order, the arbitrator set deadlines for the briefings on Syneos' Motion to Dismiss and set a deadline of September 2, 2024 for his ruling on the Motion to Dismiss.  A ZOOM hearing on Syneos' Motion to Dismiss was held on August 14, 2024.  During the hearing, the arbitrator largely sat quiet and the attorneys largely engaged in a freestyle mass argument which at one point involved a pointed untrue personal insult directed at Attorney Culbertson by a Syneos assistant counsel.  On September 9, 2024, Katherine Blume, the case manager, sent out a message advising that the arbitrator has been sick, which has delayed him from making his ruling and that the arbitrator is hopeful that he would complete his ruling within the next "week or so."  As stated above, the arbitrator did not make his ruling until October 30, 2024.

WHEREFORE, the Petitioner prays the Court that it vacate and remand the Arbitration Award of the arbitrator.

This ___ day of January 2025.

/s/ Brett Freeman _____
Brett Freeman
10605 S James Court
Jenks, OK 74037
Telephone: (918) 629-9580

**JAMS**

Ref. No.:  5310000660

FREEMAN, BRETT,

        Claimant,                         HUGH E. HACKNEY, ARBITRATOR

v.

SNYEOS HEALTH, LLC,

        Respondent.

## AWARD

Parties and Counsel:  The parties are identified in the caption and are represented as follows:

| | |
|---|---|
| Krispen Culbertson<br>**Culbertson & Associates**<br>315 Spring Garden St.<br>Suite 300<br>Greensboro, NC 27401 | Bob Sar<br>Charlotte Smith<br>Jefferson Whisenant<br>Haseeb Fatmi<br>**Ogletree Deakins**<br>8529 Six Forks Road<br>Forum IV, Suite 600<br>Raleigh, NC 27615 |
| Warner Mendenhall<br>Brian Unger<br>**L/O Warner Mendenhall**<br>190 North Union Street<br>Suite 201<br>Akron, Ohio 44304 | |
| **Counsel for Claimant** | **Counsel for Respondent** |

1



## I. **FACTS**

Syneos is an international healthcare services company that contracts with client companies for, among other things, the recruitment, training and provision of employees for use in the field of pharmaceutical sales and insurance reimbursement.  Claimant was hired, trained and ultimately paid by Syneos, but was in turn "subcontracted" by request to a client company in the field of sales reimbursement of its product to potential health-care purchasers.

Syneos recruited and hired the instant "employee," Brett Freeman, and then subtracted him to the client company for health-care related labor.  The client company then paid Syneos for the training expenses and labor of the Syneos-contracted employee, and Syneos, following various deductions, ultimately paid the "employee" Freeman that it had "subbed out" to the client company.

The Syneos employees did not at any relevant time work in "the field" of Syneos headquarters or any Syneos-owned environment or personnel, nor in the proximity of any direct Syneos corporate-level employee; they worked instead at the client companies' designated areas, and with the client companies' designated contacts.

Claimant Freeman filed a Charge of Title VII Discrimination based on religion on April 11, 2022, Charge No. 450-2022-01473.  He received a Notice of Right to Sue on September 12, 2022.

On October 24, 2022, Claimant and several other parties filed a lawsuit against Respondent Syneos stating claims set forth in Claimant's Demand for Arbitration.  In compliance with EEOC directives, the underlying lawsuit was filed within 90 days of Claimant's and each other ex-employee's receipt of a Notice of

Right to Sue from the EEOC. Claimant was unaware at the time of filing that he had ever executed an arbitration agreement, which was signed along with other electronic documents by checking a box on a computer screen as part of a multi-use software package utilized by Syneos for its employment "on boarding" process. *See* Affidavit of Brett Freeman attached hereto labeled "Exhibit A." Claimant was not provided a copy of the arbitration agreement after electronically signing it, or later after initially requesting it following separation from Syneos. *See* Exhibit "A."

On December 27, 2022, Respondent Syneos moved to dismiss Claimant's federal court action. In support of its motion to dismiss the proceedings in federal court, Respondent submitted "Exhibit B," an e-mail from Respondent's counsel to Claimant's counsel dated December 15, 2022, in which Syneos's counsel discussed the arbitration agreement and stated, "Please let me know if you will dismiss the claims of these three plaintiffs and proceed to arbitration." The said e-mail correspondence is labeled Exhibit "B." December 15, 2022, is outside of the 90 day period Respondent alleges Claimant was bound.

## II. INTRODUCTION

### Claimant's Allegations

This case arises from an employment dispute between Brett Freeman ("Claimant" or "Freeman") and Syneos Health, LLC ("Respondent or "Snyeos").

The parties agreed to arbitrate this matter before JAMS International and Arbitrator Hugh E. Hackney, in Dallas, Texas, under United States Federal Law and Oklahoma Law. The parties agreed that JAMS and Hackney had jurisdiction over the matter and the authority to proceed. The parties agreed that the case could be heard and determined based upon dispositive motions.

3

The Arbitrator saw, heard and evaluated the credibility, demeanor and persuasiveness of each motion filed and each case cited. My Award reflects my evaluation of them and the weight appropriately given to the credible evidence presented by each side. My Award also reflects the credibility and persuasiveness of each document admitted, presented or referred to by counsel and the weight given to each of them.

Krispen Culbertson of the law firm of Culbertson and Associates, and Brian C. Unger of the Mendenhall Law Group appeared on behalf of the Claimant; Charlotte C. Smith and Haseeb S. Fatmi of Ogletree, Deakins, Nash, Smoak & Stewart appeared on behalf of the Respondent.

Both Claimant and Respondent presented exhibits which were all admitted into evidence as part of their respective documents and exhibits.

### A. **Procedural History**

On April 21, 2022, Claimant filed a charge with the EEOC asserting discrimination on the basis of disability and religion. (*See* Complaint ¶ 93) On September 12, 2022, Claimant received his Notice of Right to Sue from the EEOC. (*See id.*) On October 24, 2022, Claimant commenced a lawsuit in the United States District Court, Western District of North Carolina,[1] as one of eight party-plaintiffs.[2] On December 27, 2022, Syneos filed a partial motion to dismiss seeking dismissal of plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted as to Counts 3 and 4, fraud and UDTP respectively, and stating said claims fail as a matter of law pursuant to Rule 12(b)(6) of the Federal Rules of

---

[1] *See* Complaint for case captioned *Jami Lynn Scott et al. v. Syneos Health, LLC,* Civil Action No. 5:22-cv-0063-KDB-DCK, attached hereto as Exhibit B.

[2] Claimant's counsel Krispen Culbertson represented Claimant in the federal litigation.

4

Civil Procedure. Defendant also sought to compel arbitration of then-plaintiffs Jamie Scott's, Brett Freeman's, and Rachel Royer's ("Arbitration Plaintiffs") claims in the lawsuit pursuant to the Federal Arbitration Act, 9 USC § 1, *et seq.,* or in the alternative, to dismiss the Arbitration Plaintiffs from the action under Federal Rules of Civil Procedure 12(b)(1) and (3).

On March 3, 2023, the Arbitration Plaintiffs filed their Response in Opposition to Syneos's partial Motion to Dismiss. That same day, then-Plaintiff Brett Freeman filed a Notice of Voluntary Dismissal without prejudice as to all claims asserted on his behalf. (Exhibit "C") On April 25, 2023, the remaining Arbitration Plaintiffs in the federal action filed a Notice of Voluntary Dismissal without prejudice as to the fraud and UDTP claims.

More than 10 (ten) months after voluntarily dismissing his claims, Claimant filed his claims through JAMS on January 23, 2024. In all material respects, the Complaint filed in the instant arbitration is identical to the multi-plaintiff complaint filed with the Western District of North Carolina in October 2022. (*See Scott et al.* Complaint, Exhibit B)

### B. Claimant's Employment With Syneos

On March 24, 2021, Syneos announced it would not immediately require employees to obtain a COVID-19 vaccine as a requirement to return to in-person work. (Compl. at ¶ 18) At that time, employees could return to their in-person field work without restrictions and without vaccination. (*Id.*) However, on September 2, 2021, after vaccines became more widely available, Syneos announced a vaccine mandate for US-based employees whose roles required any in-person interaction, with options for religious and medical exemptions. (*Id.* at ¶ 22) Claimant does not allege that Syneos promised unconditional exemptions or that any

accommodations would be indefinite. (*Id.*) Syneos set an initial deadline of October 22, 2021, to either receive a full vaccination or file an exemption request. (*Id.*)

Syneos informed its employees as early as October 6, 2021, that requests for exemptions, or even approved exemptions, would not be determinative of their employment status and would not necessarily lead to indefinite accommodations. (*Id.* at ¶ 25) Instead, Syneos made clear that it would still need to conduct a hardship analysis to determine whether the approved exemptions could be accommodated. (*Id.*) Claimant never alleges that Syneos promised all exemptions would be accommodated indefinitely. (*See id.* generally) In fact, Claimant admits the preliminary approval was explained as an "interim accommodation" and/or "temporary accommodation." (*Id.* ¶¶ 32, 121-22)

Following its hardship analysis, on December 9, 2021, Syneos informed employees with approved religious and medical exemptions – "interim accommodations" – that indefinite accommodations could not be granted, as continued accommodations would impose an undue hardship on Syneos due to job responsibilities that required extensive in-person contact with colleagues, client personnel, and healthcare providers. (*Id.* at ¶¶ 25, 32) These employees, including Claimant, were given until January 31, 2022, to become vaccinated or find a position that did not require vaccination. (*Id.* at ¶ 32)

### III.  LEGAL ARGUMENT

#### A.  Standard Of Review

When deciding a motion to dismiss pursuant to Rule 12 (b)(6), an Arbitrator will review the factual allegations in the complaint and will view those allegations in the light most favorable to the non-moving party. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). However, the Arbitrator is not bound to follow the legal conclusions

offered in the complaint nor to "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarrantano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation omitted). Bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Ashcroft,* 556 U.S. at 68. To withstand a Rule 12(b)(6) motion, a litigant's allegations must provide "enough facts to state a claim to relief that is plausible." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A complaint should be dismissed when the alleged facts only permit the court (or Arbitrator) to infer "the mere possibility of misconduct," but are not sufficient to show that the requested relief is "plausible." *Iqbal*, 556 U.S. at 679. A primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant discovery because, based on the factual scenario on which the case rests, the claimant could never win. *Id.* at 678-79.

## B. **Claimant's Title VII Claims Have Expired And Must Be Dismissed.**

After exhausting administrative remedies by filing a charge with the EEOC (or an equivalent state agency) and receiving a right-to-sue letter (*see* 42 U.S.C. § 20003-5(e)(1)), a claimant has 90 days to commence an *appropriate* civil action. 42 U.S.C. § 2000e-5(f)(1). Claimant commenced this arbitration after the 90-day period, and therefore, he failed to timely file his claim.

The fact that Claimant filed his federal action (in the wrong venue) before the 90-day period expired is of no consequence and does not save Claimant from the 90-day requirement. It is well-settled that, even where a litigant files a claim in federal court within the 90-day period, and that complaint is dismissed (even voluntarily and without prejudice), the 90-day period *still* applies from the date of the Right to Sue Notice. Filing the federal action in no way satisfies the 90-day

requirement, nor does it toll the 90-days. *See Angles v. Dollar Tree Stores, Inc.,* 494 F. App'x 326, 329 (4th Cir. 2011)("The conclusion is consistent with the general rule that a Title VII complaint that has been filed but then dismissed without prejudice does not toll the 90-day limitations period."); *Brown v. Harthsorne Public School District No. 1,* 926 F.2d 959, 961 (10th Cir. 1991) (holding **when plaintiff voluntarily dismissed Title VII claims, it is as though the case was never filed,** the filing of a complaint that is eventually dismissed without prejudice does not toll the statutory period for Title VII and refusing to toll deadline); *Velasco v. iii. Dep't of Human Servs.,* 246 F.3d 1010, 1018 (7th Cir. 2001) (holding the "filing of a complaint that is dismissed without prejudice does not toll the statutory filing period of Title VII.").[3] Indeed, **a Title VII plaintiff is time-barred from refiling an action following a dismissal without prejudice where the 90-day period to sue has passed.** *Joseph v. Cnty. of Westchester DCHM,* 2024 WL 167332, AT *3 (S.D.N.Y. Jan. 16, 2024), *motion for relief from judgment denied,* 2024 WL 1118451 (S.D.N.Y. Mar. 13, 2024).

Claimant's delay in pursuing his Title VII claims falls into this very category of expired claims. Claimant received his 90-day Right to Sue Letter on September 12, 2022, automatically triggering an immovable deadline of December 11, 2022,[4] to file claims arising from his Title VII charge. (Complaint ¶ 154) Claimant filed this instant arbitration 498 days after receiving his 90 day Notice of right to Sue Letter.

Claimant may argue that a state "savings statute" would allow him to proceed with this untimely action,[5] but that argument has been unequivocally rejected in

---

[3] *Berry v. Cigna/RSI-Cigna,* 975 F.2d 1188, 1191 (5th Cir. 1992) ("If a Title VII complaint is timely filed pursuant to an EEOC right-to-sue letter and is later dismissed [without prejudice], the timely filing of the complaint does not toll the ninety-day limitations period."); *Wilson v. Grumman Ohio Corp.,* 815 F.2d 26, 28 (6th Cir. 1987)("We are persuaded that the filing of a complaint which is later dismissed without prejudice does not toll the statutory filing period of Title VII.").

[4] 90 days following Claimant's receipt of the Right to Sue Letter is Sunday, October 23, 2022.

[5] N.C. Gen. Stat. § 1A-1, Rule 41(a) ("If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced

procedurally similar actions. *See Birch v. Peters*, 25 F. App'x 122, 123 (4th Cir. 2001) (holding that filing a federal action asserting claims under Title VII, which is later voluntarily dismissed without prejudice, does not toll the 90-day limitations period, and that no saving statute could apply, and, therefore, a later-filed complaint initiated after the 90-day period was properly dismissed); *and see Brown,* 926 F.2d at 959 (10th Cir. 1991) (holding same). Accordingly, the law is clear that Claimant's Demand for Arbitration of his Title VII claims is untimely and must be dismissed.

Claimant may also argue that he is entitled to "equitable tolling" to excuse his delay in properly filing this action, but he has shown no excuse. Claimant knew that he needed to properly commence this action by filing a *Demand for Arbitration* with JAMS prior to the 90-day deadline. He did not.

To be entitled to relief by equitable tolling, Claimant would need to establish that he exercised due diligence in preserving his legal rights. *See, e.g., Willard v. Indus. Air, Inc.,* No. 1:20-CV-00823, 2021 WL 309116, at *4 (M.D.N.C. Jan. 29, 2021) (relying on *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)); *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002) (quoting *Cottrell v. Newspaper Agency Corp.,* 590 F.2d 836, 838-39 (10th Cir. 1979)) (The courts "have generally recognized equitable tolling of Title VII periods of limitation only if circumstances "rise to the level of active deception which might invoke the powers of equity to toll the limitations period.") In *Willard*, the plaintiff sought equitable tolling of the 90-day limitations period to properly file her Title VII claims because she previously filed her case in state court and did not file her action in the proper forum until two months after the 90 day deadline had expired. The court dismissed her claims.

---

within one year after such dismissal . . ."); Okla. Stat. Ann. Title 12, § 100 ("If any action is commenced within due time, and . . . if the plaintiff fails in such action otherwise than upon the merits, the plaintiff . . . may commence a new action within one (1) year . . . ").

Here, Claimant has not demonstrated that he exercised due diligence to preserve his legal rights. Claimant has been represented by counsel at all relevant times, yet he failed to properly initiate his claim. Then, he waited an additional *ten months* after dismissing his federal litigation to initiate this arbitration in the proper forum. Thus, it is clear that Claimant's Title VII claims should be dismissed. Claimant knew as early as September 12, 2022, that his deadline to file a lawsuit was December 11, 2022.[6] He cannot argue any diligent pursuit of his claims because he waited *more than ten months* to refile the *same* complaint in this arbitration that was filed in the dismissed federal court litigation. Claimant was represented by counsel at the time of filing the federal court lawsuit and voluntarily dismissing the same lawsuit. He then waited for the nearly one year before refiling his claims. He has failed to demonstrate that there were any extraordinary circumstances beyond his control that prevented a timely filing.

*Even if* Claimant's filing of the federal action tolled the 90-day period, Claimant's action would still be untimely, because Claimant waited *an additional 10 months* before filing his Demand for Arbitration. Accordingly, there is simply no basis to allow Claimant to proceed with claims that were not timely commenced in the proper forum, filed after the 90-day deadline, *and* where Claimant waited *an additional* 10 months to exercise his rights.

Ultimately, "[i]n the long run, experience teaches that ***strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.***" *Mohasco Corp. v. Silver,* 447 U.S. 807, 826,

---

[6] Any argument by Claimant that the time to refile his Complaint was tolled while his federal litigation was pending also fails. *Elmore v. Henderson,* 227 F.3d 1009, 1011 (7th Cir. 200) ("But if the suit is dismissed without prejudice, meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out and *the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing.*"). Any such argument is also irrelevant, as even that extended timeline had expired upon the filing of this arbitration 400+ days later.

100 S.Ct. 2486, 2497, 65 L.Ed. 532 (1980).  Claimant's Title VII claims must be dismissed.

### C. Claimant's UDTP Claim Fails As a Matter of Law Because Claims Under Chapter 75 Are Not Applicable To Employment Disputes.

Claimant's UDTP claim under Chapter 75 of North Carolina's General Statutes does apply in this employment arbitration. Freeman's complaint states, "[t]he misrepresentations, omissions and coercive uses of the employer role in order to deprive certain employees of customary benefits and employment constitute unfair and deceptive acts or practices and/or unfair methodologies of competition on the part of Defendant Syneos." (Compl. 2 at ¶ 221) Claimant's allegations defeat his claim.[7]

It is well established that Chapter 75 does not apply to general employment relationships. Rather, Chapter 75 is a consumer protection law applicable to commercial and consumer transactions. *See Schlieper v. Johnson*, 195 N.C. App. 257, 267, 672 S.E.2d 548, 555 (2009); *Dalton v. Camp,* 353 N.C. 647, 656, 548 S.E.2d 704, 710 (2001) ("[T]he Act does not normally extend to run-of-the-mill employment disputes[.]"); *Wilson*, 157 N.C. App. 355 (dismissing a Chapter 75 action as "not contemplated" by the Act when a disgruntled former employee challenged his former employer's change to its bylaws to prevent him from serving

---

[7] Chapter 75 was not meant to encompass all business activities or all wrongdoings in a business setting, but "was adopted to ensure that the original intent of the statue … was effectuated." *Wilson v. Blue Ridge Elec. Membership Corp.*, 157 N.C. App. 355, 357-58, 578 S.E.2d 692, 694 (2003) (quoting *Threatt v. Hiers,* 76 N.C. App. 521, 523, 333 S.E.2d 772, 773 (1985), *disc. review denied,* 315 N.C. 3997, 338 S.E.2d 887 (1986)). The original intent of the statute included:

> [T]o provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings *between buyers and sellers* at all level(s) of commence be had in this State.

*Bhatt v. Buckland*, 328 N.C. 240, 245, 400 S.E.2d 440, 443 (1991) (emphasis added).

on its board); *Buie v. Daniel Int'l Corp.,* 56 N.C. App. 445, 448, 289 S.E.2d 118, 119-120 (1982), *review denied,* 305 N.C. 759, 292 S.E.2d 574 (1982) (affirming dismissal of a Chapter 75 claim when the employee alleged she was discharged for seeking workers' compensation benefits).

This case is a dispute between a former employee and his former employer over whether the former employee's termination for noncompliance with a workplace policy was proper. Freeman alleges that the Chapter 75 claim arises from "coercive uses of the employer role. . . ." (Compl. at ¶ 221) Claimant's admission that his allegations derive from a general employment relationship dispute and not a consumer or commercial transaction renders Chapter 75 inapplicable.

### D. Claimant's Fraud Claim Fails As a Matter of Law.

Claimant Freeman resided and worked for Syneos in Oklahoma. Syneos is headquartered in North Carolina, and its employment records are maintained there. Both states require substantively similar elements to assert a claim for fraud. Syneos alleges that Claimant failed to assert the prima facie elements necessary to sustain a fraud claim.

Mere notice pleading is insufficient to state a claim for fraud. Instead, Claimant must "state with particularity the circumstances consisting fraud or mistake. Fed. R. Civ. P. 9(b); *see also* N.C.R. Civ. P. 9(b). "The essential elements of actionable fraud are: (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Becker v. Graber Builders, Inc.,* 149 N.C. App. 787, 794, 561 S.E.2d 905, 910 (2002) (quoting *Ragsdale vs. Kennedy*, 286 N.C. 130, 209 S.E.2d 494, 500 (1974)); *WTM, Inc. v. Henneck,* 125 F. Supp. 2d 864, 869 (N.D. Ill. 2000). Likewise, a plaintiff must have "reasonably

12

relied upon the representation and acted upon it" to advance a claim of fraud. *Sunset Beach Dev. LLC v. AMEC, Inc.,* 196 N.C. App. 202, 208,675, S.E.2d 46, 52 (2009); *WTM, Inc.,* 125 F. Supp. 2d at 869. Combined with Rule 9's heightened pleading standard, this means a plaintiff cannot simply state the *prima facie* elements as fact, but must allege the time, place and content of the fraudulent representation, the identity of the person making the representation, and what was obtained as a result of the fraudulent acts or representation. *Terry v. Terry*, 302 N.D. 77, 85, 273, S.E.2d 674, 678 (1981); *Mutelle Generale Fracaise Vie v. Life Assurance Co.,* 688 F. Supp. 386, 393 (N.D. Ill. 1988) (dismissing fraud claims for failing to plead claim with particularity).

Claimant alleges that Syneos committed fraud by initially stating it would grant Claimant's vaccine exemption requests, and later, determining it would not grant an indefinite accommodation. (Compl. ¶ 219) Claimant groups his allegations with the experiences of *other* third-party employees, making it almost impossible for Syneos to determine the basis for Claimant's *individualized* claims.   In so alleging, Claimant fails to identify sufficient, specific facts uniquely relating to his in support of his fraud claims, and this claim fails as a matter of law. (*Id.* at ¶¶ 214-19)

**_Failure to Plead False Representation._**  Claimant alleges that harm occurred to him when his employment was terminated because of Syneos's ultimate decision not to indefinitely accommodate his approved exemption.  However, to sustain a claim for common law fraud, he must particularly allege that Syneos expressly represented to Claimant that his exemption would be indefinitely accommodated, no matter the results of Syneos's hardship analysis, and that Syneos knew at the time of the representation that it was false.  Such an allegation is entirely absent

13

from the Complaint. Instead, Claimant alleges that Syneos informed him as early as October 6, 2021, that it may be unable to accommodate exemptions due to a potential hardship. (Compl. at ¶ 25)   Claimant acknowledges his requests for exemptions to the vaccine requirement were temporarily approved, including time for Syneos to conduct an undue hardship analysis.   Claimant fails to allege any promise of a permanent or indefinite accommodation when the undue hardship analysis was completed.

***Failure to Plead Reliance.***   Even if Clamant alleged a misrepresentation, he also fails to allege detrimental reliance on that representation with particularity. *See Terry*, 302 N.C. at 85, 273 S.E.2d at 678 (under Rule 9, requiring fraud allegations to specifically allege "what was obtained as a result of the fraudulent act or representation."). The only "reliance" alleged in Claimant's fraud pleadings are vague allegations and recitations of the claim's element insufficient to meet Rule 9's heightened pleading standard.   Claimant only alleges:

"Yet, Syneos claimed notwithstanding an 'undue hardship' with full intent that the employees herein rely on this representation." [sic] (*Id.* at ¶ 215)

"Syneos made the representations … with the full expectation and intention that the plaintiffs herein would rely on said false statements.   Syneos intended to induce reliance, and plaintiffs did reasonably rely on the false statement to the damage of themselves.   Said damage took the form of being dissuaded from seeking timely legal advice to protect their jobs prior to the vaccinate or terminate letter of September 2021, and December 2021 [sic], and of failing due to their reasonable reliance on the false representations to seek other employment in order to avoid losing income." (*Id.* at ¶ 19)

14

By way of example, in *Briggs*, 53 N.C. App. 203, 280 S.E. 2d 501, the North Carolina Court of Appeals upheld the trial court's grant of summary judgment in favor of the defendant on the plaintiffs' fraud claim.  There, the undisputed evidence demonstrated that the plaintiffs were at-will employees with indefinite terms of employment; the plaintiffs were promised a severance pay if they were terminated; when their jobs were terminated, they were denied severance pay. *Briggs,* at 209, 280 S.E.2d at 505.  The court held that the plaintiffs failed to allege in their complaint, and failed to show in depositions, that they had relied in any way on the alleged misrepresentation. *Id.* At most, a promise of severance may have caused them to forego looking for or accepting a new job, *but no specific allegation or evidence showed that the plaintiffs gave up either of those actions as a result of the severance pay program. Id.*

Claimant alleges vague categories of reliance – "dissuaded from seeking timely legal advice" and "failing … to seek other employment" – but the Complaint lacks any specific allegations of reliance.  Claimant does not allege a single instance in which he considered seeking legal advice and determined that – because Syneos offered to consider religious exemption requests and provided a 90-day exemption period – there was no need.  Claimant does not allege a single instance in which he refused alternative work because he was promised indefinite accommodation or indefinite employment.   He could not make such an allegation because the Complaint alleges that Claimant was advised as early as October 6, 2021, that the request for accommodation would require an undue hardship review.  (Compl. at ¶ 25) *See, e.g., Brandis v. Lightmotive Fatman, Inc.,* 115 N.C. App. 59, 64, 443 S.E.2d 887, 890 (1994) (reversing summary judgment on a fraud claim because the plaintiff

*specifically* alleged she waived two other offers of employment and moved in reliance of an employment offer from defendant).

## AWARD

Based upon the submissions of the parties, the pleadings, any and all evidence, the cases cited and the arguments heard, Freeman's claims for relief are denied.

Dated: October 30 , 2024

Hugh E. Hackney, Arbitrator

**JAMS**

| | | |
|---|---|---|
| **FREEMAN, BRETT** | § | |
| | § | |
| **Claimant,** | § | |
| | § | |
| **v.** | § | **JAMS ARBITRATION NO. 5310000660** |
| | § | |
| **SYNEOS HEALTH, LLC** | § | |
| | § | |
| **Respondent.** | § | |

### RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Respondent Syneos Health, LLC ("Syneos" or "Respondent"), in accordance with Respondent's February 8, 2024 Response to Claimant's Demand for Arbitration and Motion to Dismiss, Paragraph 4(d) of the Parties' Mutual Agreement to Arbitrate (*see* Exhibit A), and JAMS Rule 18, submits this Memorandum of Law in Support of its Motion to Dismiss Claimant Brett Freeman's ("Claimant") claims of: Employment Discrimination Based on Religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I); Retaliation in violation of Title VII (Count II); Fraud (Count III); and Unfair and Deceptive Trade Practices ("UDTP") Under Chapter 75 of the North Carolina Code (Count IV). Counts I through IV should be struck because: (i) Counts I and II expired months prior to initiating arbitration and (ii) Counts III and IV are futile and fail to state a claim upon which relief can be granted.

**I.**     **SUMMARY OF ARGUMENTS**

Despite receiving his Notice of Rights letter, wherein the Equal Employment Opportunity Commission ("EEOC") expressly advised him he must initiate litigation within 90 days, Claimant waited nearly ***500*** days before filing a demand for arbitration in the appropriate forum. While Claimant may attempt to rely upon his participation in a federal litigation as a crutch to continue asserting blatantly expired claims, federal law is clear that filing an action and then subsequently



dismissing the action, whether voluntarily and without prejudice or otherwise, does ***not*** toll the statute of limitations or filing deadline. Moreover, and as explained more thoroughly herein, no state's savings statute or equitable tolling applies in this scenario. Accordingly, Claimant's Title VII claims have expired and must be dismissed.

To state a claim for fraud, Claimant must allege a specific misrepresentation, made by Syneos, which he actually relied on to his detriment. To survive a motion to dismiss, both the misrepresentation and the reliance must be alleged with particularity, pursuant to Federal Rule of Civil Procedure 9(b). Claimant fails to allege that Syneos made any kind of representation that it would accommodate a vaccine exemption permanently or that Claimant, an at-will employee, was entitled to a defined term of employment. Claimant also fails to allege specifically any way in which he actually relied on any alleged misrepresentation. Accordingly, Claimant's claim for common law fraud (Count III) fails as a matter of law.

Claimant also alleges Syneos's "misrepresentations" and the "coercive uses of the employer role" constitute unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1. (*Id.* at ¶ 221). However, North Carolina courts have consistently held that Chapter 75 is not applicable to employment disputes between an employer and employee. As such, Claimant's claim for unfair and deceptive trade practices (Count IV) also must be dismissed as a matter of law.

## II.    FACTUAL BACKGROUND

### A.    Procedural History

On April 21, 2022, Claimant filed a charge with the EEOC, asserting discrimination on the basis of disability and religion. (*See* Complaint ¶ 153). On September 12, 2022, upon Claimant's request, the EEOC issued Claimant his Notice of Right to Sue. (*See id.*).

On October 24, 2022, Claimant, in violation of his Arbitration Agreement, commenced a

lawsuit in the United States District Court, Western District of North Carolina,[1] as one of eight party-plaintiffs.[2] On December 27, 2022, Syneos filed a Partial Motion to Dismiss, seeking dismissal of Plaintiffs' Amended Complaint for failure to state a claim upon which relief may be granted as to Counts III and IV, fraud and UDTP, respectively, and because said claims fail as a matter of law, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Therein, Defendant also sought to compel arbitration of Plaintiffs Jami Scott's, Brett Freeman's, and Rachael Royer's ("Arbitration Plaintiffs") claims in the lawsuit, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, or in the alternative, to dismiss the Arbitration Plaintiffs from the action under Federal Rules of Civil Procedures 12(b)(1) and (3).

On March 3, 2023, Plaintiffs filed their Response in Opposition to Syneos's Partial Motion to Dismiss. The same day, then-Plaintiff Brett Freeman filed a Notice of Voluntary Dismissal without Prejudice as to all claims asserted on his behalf. (Exhibit C). On April 25, 2023, the remaining Plaintiffs in the federal action filed a Notice of Voluntary Dismissal without prejudice as to the fraud and UDTP claims.

More than ten (10) months after voluntarily dismissing his claims, Claimant refiled his claims through JAMS on January 23, 2024. In all material respects, the Complaint filed in the instant arbitration is identical to the multi-plaintiff complaint filed with the Western District of North Carolina in October 2022. (*See Scott et al.* Complaint, Exhibit B).

**B.    Claimant's Employment with Syneos**

On March 24, 2021, Syneos announced it would not immediately require employees to obtain a COVID-19 vaccine as a requirement to return to in-person work. (Compl. at ¶ 18). At that

---

[1] *See* Complaint for case captioned *Jami Lynn Scott, et al v. Syneos Health, LLC*, Civil Action No. 5:22-cv-00163-KDB-DCK, attached hereto as Exhibit B.

[2] Claimant's Counsel Krispen Culbertson represented Claimant in the federal litigation.

time, employees could return to their in-person field work without restrictions and without vaccination. (*Id*.). However, on September 2, 2021, as vaccines became more widely available, Syneos announced a vaccine mandate for US-based employees whose roles required any in-person interaction, with options for religious and medical exemptions. (*Id*. at ¶ 22). Claimant does not allege that Syneos promised unconditional exemptions or that any accommodations would be indefinite. (*Id*.). Syneos set an initial deadline of October 22, 2021 to either receive a full vaccination or file an exemption request. (*Id*.).

Syneos informed its employees as early as October 6, 2021 that requests for exemptions, or even approved exemptions, would not be determinative of their employment status and would not necessarily lead to indefinite accommodations. (*Id*. at ¶ 25). Instead, Syneos made clear that it would still need to conduct a hardship analysis to determine whether the approved exemptions could be accommodated. (*Id*.). Claimant never alleges that Syneos promised all exemptions would be accommodated indefinitely. (*See id*. *generally*). In fact, Claimant admits his medical exemption was approved "for only 90 days." (*Id*. ¶ 145). Moreover, within 3 days of his religious exemption being temporarily approved, Syneos provided further notice that he would need to become vaccinated by January 14, 2022. (*Id.* ¶ 149).

Following its hardship analysis, on December 9, 2021, Syneos informed employees with approved religious and medical exemptions – "interim accommodations" – that indefinite accommodations could not be granted, as continued accommodations would impose an undue hardship on Syneos due to job responsibilities that required extensive in-person contact with colleagues, client personnel, and healthcare providers. (*Id*. at ¶¶ 25, 32). These employees, including Claimant, were given until January 31, 2022 to become vaccinated or find a position that did not require vaccination. (*Id*. at ¶ 32).

III.    **LEGAL ARGUMENT**

A.    **Standard of Review**

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Arbitrator should accept the well-plead factual allegations in the complaint and view those allegations in the light most favorable to the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Arbitrator is not bound to follow the legal conclusions offered in the complaint nor to "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation omitted). Bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Ashcroft*, 556 U.S. at 68. To withstand a Rule 12(b)(6) motion, a litigant's allegations must provide "enough facts to state a claim to relief that is plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint should be dismissed when the alleged facts only permit the court (or Arbitrator) to infer "the mere possibility of misconduct" but are not sufficient to show that the requested relief is "plausible." *Iqbal*, 556 U.S. at 679. A primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant discovery because, based on the factual scenario on which the case rests, the claimant could never win. *Id.* at 678-79.

B.    **Claimant's Title VII Claims Have Expired and Must be Dismissed.**

After exhausting administrative remedies by filing a charge with the EEOC (or an equivalent state agency) and receiving a right-to-sue letter (*see* 42 U.S.C. § 2000e-5(e)(1)), a claimant has 90 days to commence an ***appropriate*** civil action. 42 U.S.C. § 2000e-5(f)(1). Claimant commenced this arbitration after the 90-day period, and, therefore, he failed to timely file his claim.

The fact that Claimant filed his federal action (in the wrong venue) before the 90-day period expired is of no consequence, and does not save Claimant from the 90-day requirement. It is well-

settled that, even where a litigant files a claim in federal court within the 90-day period, and that complaint is dismissed (even voluntarily and without prejudice), the 90-day period *still* applies from the date of the Right to Sue Notice. Filing the federal action in no way satisfies the 90-day requirement, nor does it toll the 90-days. *See Angles v. Dollar Tree Stores, Inc.*, 494 F. App'x 326, 329 (4th Cir. 2011) ("This conclusion is consistent with the general rule that a Title VII complaint that has been filed but then dismissed without prejudice does not toll the 90-day limitations period."); *Brown v. Harthsorne Public School District No. 1*, 926 F. 2d 959, 961 (10th Cir. 1991) (holding ***when plaintiff voluntarily dismissed Title VII claims, it is as though the case was never filed***, the filing of a complaint that is eventually dismissed without prejudice does not toll the statutory period for Title VII and refusing to toll deadline); *Velasco v. Ill. Dep't of Human Servs.*, 246 F.3d 1010, 1018 (7th Cir. 2001) (holding the "filing of a complaint that is dismissed without prejudice does not toll the statutory filing period of Title VII").[3] Indeed, **a Title VII plaintiff is time-barred from refiling an action following a dismissal without prejudice where the 90-day period to sue has passed**. *Joseph v. Cnty. of Westchester DCMH*, 2024 WL 167334, at *3 (S.D.N.Y. Jan. 16, 2024), *motion for relief from judgment denied*, 2024 WL 1118451 (S.D.N.Y. Mar. 13, 2024).

Claimant's delay in pursuing his Title VII claims falls into this very category of expired claims. Claimant received his 90-day Right to Sue Letter on September 12, 2022, automatically triggering an immovable deadline of December 11, 2022, to file claims arising from his Title VII charge. (Complaint ¶ 154). That date has long since passed. In fact, Claimant filed the instant

---

[3] *Berry v. Cigna/RSI-Cigna*, 975 F.2d 1188, 1191 (5th Cir. 1992) ("If a Title VII complaint is timely filed pursuant to an EEOC right-to-sue letter and is later dismissed [without prejudice], the timely filing of the complaint does not toll the ninety-day limitations period."); *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 28 (6th Cir. 1987) ("We are persuaded that the filing of a complaint which is later dismissed without prejudice does not toll the statutory filing period of Title VII.").

arbitration 498 days after receiving his 90-day Notice of Right to Sue Letter.

Claimant may argue that a state "savings statute" would allow him to proceed with this untimely action,[4] but that argument has been unequivocally rejected in procedurally similar actions. *See Birch v. Peters*, 25 F. App'x 122, 123 (4th Cir. 2001) (holding that filing a federal action asserting claims under Title VII, which is later voluntarily dismissed without prejudice, does not toll the 90-day limitations period, and that no saving statute could apply, and, therefore, a later-filed complaint initiated after the 90-day period was properly dismissed); *and see Brown*, 926 F.2d at 959 (10th Cir. 1991) (holding same). Accordingly, the law is clear that Claimant's Demand for Arbitration of his Title VII claims is untimely and must be dismissed.

Claimant may also argue that he is entitled to "equitable tolling" to excuse his delay in properly filing this action, but no excuse exists. First, Claimant knew that he needed to properly commence this action by filing a *Demand for Arbitration* with JAMS prior to the 90-day deadline. He did not, and there is no excuse for this failure.

Second, to be entitled to equitable tolling, Claimant would need to establish that he exercised due diligence in preserving his legal rights. *See, e.g., Willard v. Indus. Air, Inc.*, No. 1:20-CV-00823, 2021 WL 309116, at *4 (M.D.N.C. Jan. 29, 2021) (*relying on Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)); *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002) (quoting *Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838-39 (10th Cir. 1979)) (The Tenth Circuit "has generally recognized equitable tolling of Title VII periods of limitation only if circumstances 'rise to the level of active deception which might invoke the powers of equity to toll

---

[4] N.C. Gen. Stat. § 1A-1, Rule 41(a) ("If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal…"); Okla. Stat. Ann. tit. 12, § 100 ("If any action is commenced within due time, and…if the plaintiff fail in such action otherwise than upon the merits, the plaintiff…may commence a new action within one (1) year…").

the limitations period.'"). In *Willard*, the plaintiff sought equitable tolling of the 90-day limitations period to properly file his Title VII claims because he previously filed his case in state court and did not file his action in the proper forum until two months after the 90-day deadline had expired. The court dismissed his claims.

The same is true here: Claimant cannot demonstrate that he exercised due diligence to preserve his legal rights. Not only did Claimant, who has been represented by counsel at all relevant times, fail to properly initiate his claim in the first instance, he waited an additional ***ten months*** after dismissing the federal litigation to initiate this action in the proper forum. It is clear, therefore, that Claimant's Title VII claims should be dismissed. Claimant knew as early as September 12, 2022, that his deadline to file a lawsuit was December 11, 2022.[5] He cannot plausibly argue any diligent pursuit of his claims, as he waited *more than ten months* to refile the <u>*same*</u> complaint in this arbitration as was filed in the dismissed federal litigation (including many irrelevant factual allegations relating to third parties). Moreover, where Claimant was represented by counsel at the time of filing the federal lawsuit and voluntarily dismissing the same *and* for the nearly one year he waited to refile his claims, Claimant cannot convincingly argue that there were any extraordinary circumstances beyond his control that prevented a timely filing.

Third, *even if* Claimant's filing of the federal action tolled the 90-day period, Claimant's action would still be untimely, because Claimant waited *an additional 10 months* before filing his Demand for Arbitration. Accordingly, there is simply no basis to allow Claimant to proceed with claims that were not timely commenced in the proper forum, filed after the 90-day deadline, *and*

---

[5] Any argument by Claimant that the time to refile his Complaint was tolled while his federal litigation was pending also fails. *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000) ("But if the suit is dismissed without prejudice, meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out and ***the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing***."). Any such argument is also irrelevant, as even that extended timeline had expired upon the filing of this arbitration 400+ days later.

where Claimant waited *an additional* 10 months to exercise his rights.

Ultimately, "[i]n the long run, experience teaches that ***strict adherence to the procedural requirements specified by the legislature is the best guarantee of <u>evenhanded administration</u> of the law***." *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980). Accordingly, both the letter of the law and spirit of justice require Claimant's Title VII claims be dismissed.

### C.   Claimant's UDTP Claim Fails as a Matter of Law Because Claims under Chapter 75 Are Not Applicable to Employment Disputes.

Claimant's UDTP claim under Chapter 75 of North Carolina's General Statutes is simply inapplicable in this employment arbitration. Claimant's Complaint merely states, in conclusory fashion, "[t]he misrepresentations, omissions and coercive uses of the employer role in order to deprive certain employees of customary benefits and employment constitute unfair and deceptive acts or practices and/or unfair methodologies of competition on the part of Defendant Syneos." (Compl. at ¶ 221). Claimant's allegations defeat his claim.[6]

It is well established that Chapter 75 does not apply to general employment relationships. Instead, Chapter 75 is a consumer protection law applicable to commercial and consumer transactions. *See Schlieper v. Johnson*, 195 N.C. App. 257, 267, 672 S.E.2d 548, 555 (2009);

---

[6] Chapter 75 was not meant to encompass all business activities or all wrongdoings in a business setting but "was adopted to ensure that the original intent of the statute…was effectuated." *Wilson v. Blue Ridge Elec. Membership Corp.*, 157 N.C. App. 355, 357–58, 578 S.E.2d 692, 694 (2003) (quoting *Threatt v. Hiers*, 76 N.C. App. 521, 523, 333 S.E.2d 772, 773 (1985), *disc. review denied*, 315 N.C. 397, 338 S.E.2d 887 (1986)). The original intent of the statute included:

> [T]o provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings *between buyers and sellers* at all level[s] of commerce be had in this State.

*Bhatti v. Buckland*, 328 N.C. 240, 245, 400 S.E.2d 440, 443 (1991) (emphasis added).

*Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 710 (2001) ("[T]he Act does not normally extend to run-of-the-mill employment disputes[.]"); *Wilson*, 157 N.C. App. 355 (dismissing a Chapter 75 action as "not contemplated" by the Act when a disgruntled former employee challenged his former employer's change to its bylaws to prevent him from serving on its board); *Buie v. Daniel Int'l Corp.*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119–120 (1982), *review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982) (affirming dismissal of a Chapter 75 claim when the employee alleged he was discharged for seeking workers' compensation benefits). The undersigned has been unable to uncover any North Carolina appellate decision that extends Chapter 75 liability to standard employment disputes – let alone to an accommodation decision.

The instant case is a dispute between a former employee and his former employer over whether the former employee's termination for noncompliance with a workplace policy was proper. Claimant overtly alleges that the Chapter 75 claim arises from "coercive uses of the employer role…." (Compl. at ¶ 221). Claimant's admission that his allegations derive from a general employment relationship dispute and not a consumer or commercial transaction, renders Chapter 75 inapplicable.

**D.    Claimant's Fraud Claim Fails as a Matter of Law.**

Though it is not clear on which state's common law Claimant bases his fraud claim, Oklahoma (where Claimant resides and worked for Syneos) and North Carolina (where Syneos is headquartered and its employment records are maintained) require substantively similar elements to assert a claim for fraud. Under either state's law, Claimant fails to allege the essential prima facie elements to sustain a fraud claim.

Mere notice pleading is insufficient to state a claim for fraud. Instead, Claimant must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also* N.C. R. Civ. P. 9(b); Okla. Stat. Tit. 12 §2009(B). "The essential elements of actionable fraud are:

'(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 794, 561 S.E.2d 905, 910 (2002) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)); *Silk v. Phillips Petroleum Co.*, 1988 OK 93, ¶ 12, 760 P.2d 174, 177 (1988). Likewise, a claimant must have "reasonably relied upon the representation and acted upon it" to advance a claim of fraud. *Sunset Beach Dev., LLC v. AMEC, Inc.*, 196 N.C. App. 202, 208, 675 S.E.2d 46, 52 (2009); *Silk*, 1988 OK 93, ¶ 12, 760 P.2d at 177. Combined with Rule 9's heightened pleading standard, this means a plaintiff cannot simply state the *prima facie* elements as fact, but must allege the time, place, and content of the fraudulent representation, the identity of the person making the representation, and what was obtained as a result of the fraudulent acts or representation. *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981); *Kunneman Properties, LLC v. Marathon Oil Co.*, 2019 WL 4658362, at *5 (N.D. Okla. Sept. 24, 2019) (dismissing fraud claims).

Here, Claimant appears to allege that Syneos committed fraud by initially stating it would grant Claimant's vaccine exemption requests and later determining it would not grant an indefinite accommodation. (Compl. ¶ 219). Compounding Claimant's already vague pleadings, Claimant groups his allegations with the experiences of *other* third-party employees, making it near impossible for Syneos to know the basis for Claimant's *individual* claims. In so alleging, Claimant fails to identify sufficient, specific facts uniquely relating to him in support of his fraud claim, and this claim fails as a matter of law. (*Id.* ¶ 214-19).

**_Failure to Plead False Representation._** Claimant alleges that harm occurred to him when his employment was terminated because of Syneos's ultimate decision not to indefinitely accommodate his approved exemptions. However, to sustain a claim for common law fraud, he

must particularly allege that Syneos expressly represented to the Claimant that his exemption would be indefinitely accommodated, no matter the results of Syneos's hardship analysis, and that Syneos knew at the time of the representation that it was false. Such an allegation is entirely absent from the Complaint. Instead, Claimant alleges that Syneos informed him as early as October 6, 2021 that it may be unable to accommodate exemptions due to a potential hardship. (Compl. at ¶ 25). Claimant acknowledges his requests for exemptions to the vaccine requirement were temporarily approved, including time for Syneos to conduct an undue hardship analysis. Claimant fails to allege any promise of a permanent or indefinite accommodation when the undue hardship analysis was completed.

*__Failure to Plead Reliance.__* Even if Claimant alleged a misrepresentation – which he does not – he also fails to allege detrimental reliance on that representation with particularity. *See Terry*, 302 N.C. at 85, 273 S.E.2d at 678 (under Rule 9, requiring fraud allegations to specifically allege "what was obtained as a result of the fraudulent act or representation."). The only "reliance" alleged in Claimant's fraud pleading are vague allegations and rote recitations of the claim's element, insufficient to meet Rule 9's heightened pleading standard. Claimant only alleges:

- "Yet, Syneos claimed notwithstanding an 'undue hardship,' with full intent that the employees herein rely on this representation." [*sic*] (*Id*. at ¶ 215).

- "Syneos made the representations…with the full expectation and intention that the plaintiffs herein would rely on said false statements. Syneos intended to induce reliance and plaintiffs did reasonably rely on the false statements to the damage of themselves. Said damage took the form of being dissuaded from seeking timely legal advice to protect their jobs prior to the vaccinate or terminate letters of September, 2021 and December, 2021, [*sic*] and of failing due to their reasonable reliance on the false representations to seek other employment in order to avoid losing income." (*Id*. at ¶ 19).

By way of example, in *Briggs*, 53 N.C. App. 203, 280 S.E.2d 501, the North Carolina Court of Appeals upheld the trial court's grant of summary judgment in favor of the defendant on the

12

plaintiffs' fraud claim. There, the undisputed evidence of record showed: the plaintiffs were at-will employees with indefinite terms of employment; the plaintiffs were promised a severance pay if they were terminated; when their jobs were terminated, they were denied severance pay. *Briggs*, at 209, 280 S.E.2d at 505. The court held that the plaintiffs failed to allege in their complaint, and failed to show in depositions, that they had relied in any way on the alleged misrepresentation. *Id*. At most, a promise of severance may have caused them to forego looking for or accepting a new job, *but no specific allegation or evidence showed that the plaintiffs gave up either of those actions as a result of the severance pay program. Id*.

Claimant alleges vague categories of reliance – "dissuaded from seeking timely legal advice" and "failing…to seek other employment" – but the Complaint lacks any specific allegations of reliance. Claimant does not allege a single instance in which he considered seeking legal advice and determined that -- because Syneos offered to consider religious exemption requests and provided a 90-day exemption period -- there was no need. Claimant does not allege a single instance in which he refused alternative work because he was promised indefinite accommodation or indefinite employment. Nor could he make such an allegation because the Complaint alleges that Claimant was advised as early as October 6, 2021 that requests for accommodation would require an undue hardship review. (Compl. at ¶ 25). *See e.g. Brandis v. Lightmotive Fatman, Inc.*, 115 N.C. App. 59, 64, 443 S.E.2d 887, 890 (1994) (reversing summary judgment on a fraud claim because the plaintiff *specifically* alleged he waived two other offers of employment and moved in reliance of an employment offer from defendant).

## IV.    CONCLUSION

Respondent respectfully moves for Claimant's claims to be dismissed in full.

This the 24th day of May, 2024.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*/s/Charlotte C. Smith*
Robert A. Sar (N.C. Bar No. 22306)
Charlotte C. Smith (N.C. Bar No. 53616)
Haseeb S. Fatmi (N.C. Bar No.57614)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919.787.9700
Facsimile: 919.783.9412
Email: Bob.Sar@ogletree.com
Email: Charlotte.Smith@ogletree.com
Email: Haseeb.Fatmi@ogletree.com

*Attorneys for Respondent*

14

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2024, a copy of the foregoing **RESPONDENT'S**

**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** was served via

email to counsel for Claimant as follows:

Krispen Culbertson, Esq.
Culbertson & Associates
315 Spring Garden Street
Greensboro, NC 27401

Mendenhall Law Group
Brian C. Unger, Esq.
20 Park Plaza, 400-4
Boston, MA 02116
617.297.2227
brian@warnermendenhall.com

Warner Mendenhall
190 N. Union St., Ste. 201
Akron, OH 44304
330.535.9160
warner@warnermendenhall.com

*Attorneys for Claimant*

This the 24th day of May, 2024.

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

*s/ Charlotte C. Smith*
Robert A. Sar (N.C. Bar No. 22306)
Charlotte C. Smith (N.C. Bar No. 53616)
Haseeb S. Fatmi (N.C. Bar No. 57614)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919.787.9700
Facsimile: 919.783.9412
Email: Bob.Sar@ogletree.com
Email: Charlotte.Smith@ogletree.com
Email: Haseeb.Fatmi@ogletree.com

*Attorneys for Respondent*

15

JS 44 (Rev. 04/21) (TXND 5/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Brett Freeman

## DEFENDANTS
Syneos Health, LLC   **3 - 25 CV0126-8**

**(b)** County of Residence of First Listed Plaintiff   Tulsa County, OK
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Wake County, NC
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

JAN 1 7 2025

AGC
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
9 USC § 10
Brief description of cause:
Petition to Vacate Arbitration Award

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE   Scholer                    DOCKET NUMBER   3:25-cv-S-BN

DATE   1-15-2025

SIGNATURE OF ATTORNEY OF RECORD   *Brett Freeman*

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|



**Culbertson & Associates**
**Attorneys at Law**

Attorneys:
K.E. Krispen Culbertson
William F. May

315 Spring Garden St., Ste 300
Greensboro, NC 27401
Telephone: (336) 272-4299
Facsimile: (336) 272-2688

email:
partner@culbertsonatlaw.com
website: www.culbertsonatlaw.com
Combined 50+ Years Experience

**VIA OVERNIGHT MAIL**

January 14, 2025

RECEIVED

JAN 1 7 2025

AGC

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Clerk
US District Court
1100 Commerce Street, Rm 1452
Dallas, TX 75242

RE:  Brett Freeman v. Syneos Health, LLC

Dear Sir/Madam:

Our law firm represented Mr. Freeman in the arbitration for which Mr. Freeman is now seeking to vacate the award.  However, because no one in our office is licensed to practice law in Texas, our role now is limited to assisting Mr. Freeman in filing his Petition to Vacate Arbitration Award and obtaining service thereof on the Respondent.  We're playing a similar limited role for the Petitioner in a related case, *Jami Scott v. Syneos Health, LLC,* 3:25-cv-0044-S-BN, filed on January 7, 2025.

Please find enclosed for filing a Petition to Vacate Arbitration Award and cover sheet, and for filing and issuance a summons.  Also, please find enclosed a check in the amount of $405.00 to cover the filing fees.

This being an arbitration appeal, we are in a somewhat unique situation than in other types of lawsuits.  Under the applicable statutes, a party has three months after the issuance of an arbitration award to not only file a Petition to Vacate Arbitration Award but also serve the same on the opposing party.  In this case, the arbitrator entered his Award on October 30, 2024.  We therefore have to get this petition served on the Respondent by a US Marshal in North Carolina by the end of the day on January 30, 2025.  Since we will be the ones taking everything to the US Marshal for service, we need to get the filed and issued summons in our hands as quickly as possible.  In the related case referenced above, your office was kind enough to email the filed and issued summons to us.  Could you possibly do that for us in this case?  We would really appreciate it.

Thank you for your assistance.

Sincerely,

K.E. Krispen Culbertson





ORIGIN ID:AIXA  (336) 272-4299
XXXXXXX
GREENSBORO, NC 27401
UNITED STATES US

**TO** CLERK — US DISTRICT COURT

1100 COMMERCE ST
STE 1452
DALLAS TX 75242
(214) 753-2200





**TRK#** 7714 8497 2580

FRI — 17 JA
STANDARD OVE

**XA KIPA**

TX-L



**Enve** e

**Recyc** e.

267-4542



RECEIVED

JAN 1 7 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS